United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

REGINA MONACO,

        Plaintiff,

  v.

LIBERTY LIFE ASSURANCE CO,

        Defendant.
_____/

No. C06-07021 MJJ

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS; GRANTING
PLAINTIFF'S MOTION TO AMEND;
AND DENYING DEFENDANTS'
MOTION TO STRIKE**

**INTRODUCTION**

Before the Court is Defendant Liberty Life Assurance Company of Boston ("Liberty Life")
and Defendant Liberty Mutual Insurance Company's ("Liberty Mutual") (collectively,
"Defendants") Motion to Dismiss Liberty Mutual from this action.[1]  Plaintiff Regina Monaco
("Plaintiff" or "Monaco") opposes the motion and alternatively moves for leave to file an Amended
Complaint.[2]  Also before the Court is Defendants' Motion to Strike Plaintiff's Request for Judicial
Notice.[3]  For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss; the Court
**GRANTS** Plaintiff's Motion to Amend; and the Court **DENIES** Defendants' Motion to Strike
Plaintiff's Request for Judicial Notice as moot.

---

[1]Docket No. 8.

[2]Docket No. 37.

[3]Docket No. 41.

<div style="margin-left:auto"><strong>United States District Court</strong><br/>For the Northern District of California</div>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTUAL BACKGROUND**

This action arises from the alleged wrongful denial of disability benefits to which Plaintiff claims she is entitled under a group disability income policy.  On October 4, 2006, Plaintiff filed the Complaint in the Superior Court for the State of California for the County of Alameda.  On November 9, 2006, Defendants removed the action to this Court.  The material allegations taken from Plaintiff's Complaint are as follows.

Plaintiff was employed at the University of California Lawrence Livermore Laboratories ("Lawrence Livermore") and later employed at the University of California at Santa Cruz ("U.C. Santa Cruz"), during which time Plaintiff was eligible for short and long-term disability benefits under a Group Disability Income Policy ("the Policy") issued by Defendants.  (Complaint ("Compl.") at ¶¶ 9-11.)  While employed at Lawrence Livermore, Plaintiff sustained an injury for which she claimed disability benefits under the Policy.  (*Id*. at ¶ 13.)  Defendants[4] wrongfully denied Plaintiff's initial claim for benefits, and subsequently denied Plaintiff's appeal.  (*Id*. at ¶¶ 16-17.)

Plaintiff later submitted a second claim for disability benefits to Defendants under the Policy. (*Id*. at ¶¶ 18-20.)  Plaintiff's second claim arose from a "new and different injury" sustained while employed at U.C. Santa Cruz.  (*Id*. at ¶ 18.)  Plaintiff alleges that Defendants wrongfully denied her second claim for benefits, and subsequently denied her appeal.  (*Id*. at ¶¶ 20-23.)

Plaintiff asserts four causes of action against Liberty Life and Liberty Mutual.  Plaintiff's first and second causes of action are against both Defendants for breach of contract and breach of the implied covenant of good faith and fair dealing arising from Plaintiff's initial claim for benefits for her injury sustained at Lawrence Livermore.  (*Id*. at ¶¶ 24-34.)  Plaintiff's third and fourth causes of action are against both Defendants for breach of contract and breach of the implied covenant of good faith and fair dealing arising from Plaintiff's second claim for benefits for her injury sustained at U.C. Santa Cruz.  (*Id*. at ¶¶ 35-44.)

Defendants now move to dismiss each of Plaintiff's causes of action against Liberty Mutual.

---

[4]According to Plaintiff, Liberty Life is a wholly owned subsidiary of Liberty Mutual.  (*Id*. at ¶ 4.)  Liberty Life's operations, including its claims operation, was controlled and managed by Liberty Mutual.  (*Id*.)

**United States District Court**
For the Northern District of California

1    **LEGAL STANDARD**

2    A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

3    sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a

4    12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court

5    ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network,*

6    *Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Generally, dismissal is proper only when the plaintiff has

7    failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal

8    theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir.

9    1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean*

10   *Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Further, dismissal is appropriate only if it

11   appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim. *See*

12   *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). In considering a Rule 12(b)(6) motion,

13   the Court accepts the plaintiff's material allegations in the complaint as true and construes them in

14   the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.

15   2000). However, "[t]he court need not accept as true conclusionary allegations or legal

16   characterizations. Nor need it accept unreasonable inferences or unwarranted deductions of fact."

17   Hon. William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*

18   § 9:221 (2006) (citations omitted); *see also Halkin v. VeriFone Inc.*, 11 F.3d 865, 868 (9th Cir.

19   1993) (stating "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat

20   a motion to dismiss for failure to state a claim.")

21   In the context of a motion to dismiss, when matters outside the pleading are presented to and

22   accepted by the court, the motion to dismiss is converted into one for summary judgment. However,

23   matters properly presented to the court, such as those attached to the complaint and incorporated

24   within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios,*

25   *Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Where a plaintiff fails to

26   attach to the complaint documents referred to therein, and upon which the complaint is premised, a

27   defendant may attach to the motion to dismiss such documents in order to show that they do not

28   support the plaintiff's claim. *See Pacific Gateway Exchange*,  169 F. Supp. 2d 1160, 1164 (N.D.

3

United States District Court

For the Northern District of California

1   Cal. 2001); *Branch v. Tunnell*, 14 F.3d  449, 44 (9th Cir. 1994) (overruled on other grounds).  Thus,

2   the district court may consider the full texts of documents that the complaint only quotes in part.  *See*

3   *In re Stay Electronics Sec. Lit.*, 89 F.3d 1399, 1405 n.4 (1996), *cert denied*, 520 U.S. 1103 (1997).

4   This rule precludes plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting

5   references to documents upon which their claims are based."  *Parrino v. FHP, Inc.*, 146 F.3d 699,

6   705 (9th Cir. 1998).

7          Motions to dismiss for failure to state a claim are generally disfavored.  *See Gilligan v.*

8   *Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *United States v. City of Redwood City*, 640

9   F.2d 963, 966 (9th Cir. 1981).  In dismissing for failure to state a claim, "a district court should grant

10  leave to amend even if no request to amend the pleadings was made, unless it determines that the

11  pleading could not possibly be cured by the allegation of other facts."  *Doe v. United States*, 58 F.3d

12  494, 497 (9th Cir. 1995) (citations omitted).

13                                                **ANALYSIS**

14         Defendants first argue that Plaintiff's causes of action against Liberty Mutual must be

15  dismissed because Liberty Mutual is not a party to the insurance contract at issue.  Next, Defendants

16  contend that each of Plaintiff's alternative theories of liability against Liberty Mutual also fail.

17  Plaintiff responds that Liberty Mutual is liable even though it is not a party to the insurance contract.

18  Plaintiff further insists there is a unity of interests between Liberty Mutual and Liberty Life to

19  support liability against Liberty Mutual under alter-ego, joint venture, partnership, and/or agency

20  theories of liability.  Plaintiff avers that if the Court does not allow her to proceed against Liberty

21  Mutual then it would defeat her ability to recover her full amount of potential damages.[5]

22  Alternatively, Plaintiff requests leave to file an Amended Complaint.  The Court now turns to the

23  allegations against Liberty Mutual as contained in Plaintiff's operative Complaint.

24  **I.    Liberty Mutual is Not a Party to the Contract**

25         Defendants' first argument is that Plaintiff is unable to state a cause of action against Liberty

26  Mutual because Liberty Mutual is not a party to the insurance contract.  Defendants argue that the

27

28         [5]Plaintiff also alternatively requests additional time to conduct discovery regarding the relationship between Liberty Life and Liberty Mutual.  Plaintiff claims that given the early stage of this litigation, the parties have not yet engaged in any formal discovery.

                                                    4

**United States District Court**
For the Northern District of California

1 contract at issue is between Liberty Life and the University of California, therefore Liberty Mutual

2 cannot be liable because it was not a consenting party, and because it owed no legal duty to Plaintiff.

3 In opposition, Plaintiff asserts that an insured may state a cause of action against an insured's parent

4 company even though the parent company was not a contracting party.

5 An insurer is said to act in "bad faith" when it not only breaches its policy contract but also

6 breaches its duty to deal "fairly" and "in good faith" with its insured.  Generally, "[c]ontract law

7 exists to enforce legally binding agreements," whereas "tort law is designed to vindicate social

8 policy," and thus "[c]onduct amounting to a breach of contract becomes tortious only when it also

9 violates an independent duty arising from principles of tort law." *Applied Equipment Corp. v. Litton*

10 *Saudi Arabia Ltd.*, 7 Cal.4th 503, 514, 515 (1994).[6]  However, an exception to these general

11 principles "has developed in the context of insurance contracts," and "for a variety of policy reasons,

12 courts have held that breach of the implied covenant [of good faith and fair dealing] will provide the

13 basis for an action in tort." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 684, 690 (1988).

14 In the insurance context, an insurer that fails to pay benefits owing to an insured may be

15 liable for "bad faith" breach of contract.  Hon. H. Walter Croskey, *et al.*, *California Practice Guide:*

16 *Insurance Litigation* § 12:806 (2006)(citations omitted); *Foley*, 47 Cal. 3d at 682-85.  In order to be

17 liable for breach of contract a defendant must be a consenting party to the contract.  Cal. Civ. Code §

18 1550.  In order to be liable for breach of the implied covenant of good faith and fair dealing a

19 defendant must engage in some conduct that frustrates the other party's rights to the benefits of the

20 agreement.  *Foley*, 47 Cal. 3d at 684.  The same privity of contract requirement applies in

21 determining who is liable for breach of the implied covenant. *See* Hon. H. Walter Croskey, *et al.*,

22 *supra*, § 12:91 (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566 (1973).  The general rule is that a

23 "bad faith" action lies only against the insurer as the party to the contract which gives rise to the

24 implied covenant. *Id*. at § 12:92 (citing *Gruenberg*, 9 Cal 3d at 576; *Tran v. Farmers Group, Inc*.,

25 104 Cal. App. 4th 1202, 1216 (2002) (citations omitted)); *see also Waller v. Truck Ins. Exchange,*

26 *Inc*., 11 Cal. 4th 1, 36 (1995).

27

28 ⁶Because this case was removed to federal court on the basis of diversity jurisdiction, California law governs the substantive issues of the case. *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1163 (9th Cir. 1995) (citing *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1556 (9th Cir. 1991)).

**United States District Court**

For the Northern District of California

1    Here, in applying the general rule, the Complaint reveals that Liberty Mutual is not liable for

2    breach of contract because it is not a party to the insurance contract.  (Compl., Ex. A.)  The parties

3    agree that Liberty Mutual was not a party to the insurance contract.  (Plaintiff's Opposition to

4    Defendants' Motion to Dismiss ("Opp.") at 1:19-22.)  Additionally, when a plaintiff seeks damages

5    for commission of a tort that flows from an alleged breach of contract, the defendant does not have a

6    duty to the plaintiff unless the defendant was a party to the contract.  *Gruenberg*, 9 Cal. 3d at 576.

7    Plaintiff's cause of action for breach of the implied covenant fails because it flows from Plaintiff's

8    alleged breach of contract.  Because Liberty Mutual did not agree to provide disability benefits, it

9    cannot be held liable for breach of a contract to provide those benefits to Plaintiff.  *See Canine*, 2006

10   U.S. Dist. LEXIS 11073 at * 12.

11   Plaintiff argues that the decisions in *Delos v. Farmers Ins. Group, Inc*., 93 Cal. App. 3d 642

12   (1979) and *Tran v. Farmers Group, Inc*., 104 Cal. App. 4th 1202 (2002) compel a different result.

13   The Court disagrees.

14   In *Delos*, the plaintiffs sued the insurer, Farmers Insurance Exchange ("the Exchange"), and

15   the management company, Farmers Insurance Group ("the Group"), for failure to pay claims based

16   on breach of the implied duty of good faith and fair dealing and for breach of statutory duties under

17   California Insurance Code § 790.03, among other claims.  *Delos*, 93 Cal. App. 3d at 647.  The

18   Exchange was a party to the insurance contract but the Group was not.  *Id*. at 651.  Departing from

19   the general rule, the California Supreme Court allowed the cause of action for breach of the implied

20   covenant against the Group, a non-party to the contract.  *Delos*, 104 Cal. App. 4th at 653.  The court

21   noted that the relationships among the parties made the factual and legal matrix far different from

22   the traditional relationship between an insured and an insurer.  *Id*. at 651.  In particular, the court

23   explained that  statutory[7] interinsurance Exchange consisted of policyholders who pooled premiums

24   as a means to insure one another, whereas the management Group acts as the appointed attorney-in-

25   fact for each policyholder.  *Id*. at 651-51. As the fiduciary attorney-in-fact, the management Group,

26   and not the Exchange, is the entity that handles all monetary and other affairs for the policyholders.

27

28      [7]California Insurance Code section 1303. "Reciprocal or interinsurance exchange defined: The organization under
which such subscribers so exchange contracts is termed a reciprocal or interinsurance exchange, and shall be deemed the
insurer while each subscriber shall be deemed an insured." *See id*. at 651-52.

**United States District Court**
For the Northern District of California

1   *Id*. at 652.  As a result, in cases of bad faith denial of claims like this, an insured would be without

2   redress unless it could sue the management group.  *See id*. at 652-53.  The court stated, "[i]f we were

3   to accept the Group's argument and adhere to the general rule that 'bad faith' liability may be

4   imposed only against a party to an insurance contract, we would not only permit the Insurer to

5   insulate itself from liability by the simple technique of forming a management company, but we

6   would also deprive a plaintiff from redress against the party primarily responsible for damages."  *Id*.

7   at p. 652.  In further support of its decision to depart from the general rule, the court noted that §

8   790.01's statutory regulation of persons engaged in the insurance business supported the conclusion.

9   *Id*. at 653.[8]

10      The current case is distinguishable from *Delos*.  Here, the Complaint contains no allegations

11  that Liberty Mutual acted as an interinsurance exchange, no allegations that Liberty Mutual acted as

12  an appointed attorney-in-fact for Plaintiff, and no allegations that Plaintiff would be without redress

13  unless she is permitted to proceed against Liberty Mutual.  Unlike the unique relationship between

14  the parties in *Delos*, the relationship between Defendants and Plaintiff is similar to the traditional

15  relationship between an insured and an insurer.  Although Liberty Life is alleged as a wholly-owned

16  subsidiary of Liberty Mutual, Liberty Mutual is not the only entity from which Plaintiff may seek

17  redress.  *See Filippo Industries Inc*., 74 Cal. App. 4th at 1444.  Accordingly, the exception to the

18  general rule which the *Delos* court found necessary to apply, does not exist in this case.[9]

19      The Court finds that Plaintiff's allegations are insufficient to state a cause of action against

20  Liberty Mutual under the exception to the general rule described above.  The Court now turns to

21

22      [8]Subsequent to *Delos*, the California Supreme Court held that there was no private right of action under § 790.03, therefore some California courts have stated it is questionable if the basis for *Delos* still exists.  *See Filippo Industries, Inc. v. Sun Ins. Co.*, 74 Cal. App. 4th 1429, 1443 (1999); *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 304

23  (1988).

24      [9]*Tran v. Farmers Group, Inc*., 104 Cal. App. 4th 1202 (2002) is similarly inapposite.  *Tran* involved a similar fact pattern to *Delos*.  *Id*. at 1218.  In *Tran*, the plaintiff sued entities that were non-parties to the insurance contract.  *Id*. at 1213.

25  Like *Delos*, the defendants were organized as an interinsurance exchange.  *Id*. at 1210-11.  The court found plaintiff's claims against the non-contracting parties were proper because the non-contracting parties, as plaintiff's appointed attorney-in-fact,

26  owed plaintiff a fiduciary duty.  *Id*. at 1213.  The court stated, "We believe respondents, having chosen to conduct their insurance business through interinsurance exchanges that require the appointment of attorneys-in-fact to execute contracts

27  on behalf of subscriber/insureds, are bound by the ordinary rule that an attorney-in-fact is an agent owing a fiduciary duty to the principal."  *Id*.  As explained above, in contrast to *Tran*, Plaintiff here does not allege the existence of a statutory

28  interinsurance exchange or a breach of any duty predicated on an attorney-in-fact relationship.  Therefore, the Court finds that *Tran* does not support application of the exception to the general rule.

United States District Court

For the Northern District of California

1   Plaintiff's alternate theories of liability to determine if Plaintiff has otherwise stated a cause of

2   action against Liberty Mutual in the operative Complaint.

3   **II.      Alternative Theories of Liability Against Liberty Mutual**

4          **A.      Alter-Ego**

5          Defendants contend that Plaintiff's Complaint is insufficient to support the theory that

6   Liberty Mutual is the alter-ego of Liberty Life such that the Court must disregard Defendants'

7   corporate formalities.  Defendants further contend that amendment of the complaint would be futile

8   because there are no circumstances under which Plaintiff can plead sufficient facts to support an

9   alter-ego theory of liability.  Plaintiff responds that the Complaint sufficiently alleges an alter-ego

10  theory of liability, and alternatively seeks leave to file an Amended Complaint.

11         In the insurance context, bad faith liability may be imposed on a person or entity shown to be

12  a corporate insurer's "alter-ego."  To justify piercing the corporate veil on an alter-ego theory in

13  order to hold a parent corporation liable for the acts or omissions of its subsidiary, a plaintiff must

14  establish two elements: "(1) that there be such unity of interest and ownership that the separate

15  personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated

16  as those of the corporation alone, an inequitable result will follow."  *See* Hon. William W.

17  Schwarzer, et al., *supra* § 12:97.5 (citing *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300

18  (1985)); *Laird v. Capital Cities/ABC, Inc*., 68 Cal. App. 4th 727, 737 (1998).  "To put it in other

19  terms, the plaintiff must show 'specific manipulative conduct' by the parent toward the subsidiary

20  which 'relegate[s] the latter to the status of merely an instrumentality, agency, conduit or adjunct of

21  the former ....'"  *Laird*, 68 Cal. App. 4th at 742 (citing *Institute of Veterinary Pathology, Inc. v.

22  California Health Laboratories, Inc*., 116 Cal. App. 3d 111, 119-120 (1981)).  In order to

23  successfully plead liability for an underlying cause of action under the alter-ego theory, the plaintiff

24  must make allegations of facts from which it appears that recognition of the corporate entity would

25  sanction a fraud or promote injustice.  *See Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499

26  (1950); *Judelson v. Am. Metal Bearing Co.*, 89 Cal. App. 2d 256, 263 (1948).  Conclusory

27  allegations of alter-ego status are not sufficient.  *See Hokama v. E.F. Hutton & Co., Inc*., 566 F.

28  Supp. 636, 647 (C.D. Cal. 1983) (citation omitted).  There is a general presumption in favor of

8

1  respecting the corporate entity. *Calvert v. Huckins*, 875 F. Supp. 674, 678 (1995).

2  The Court finds that Plaintiff's current Complaint fails to sufficiently allege that Liberty

3  Mutual is the alter-ego of Liberty Life. Plaintiff's Complaint does not specifically allege that

4  Liberty Mutual is the alter-ego of Liberty Life, or allege facts from which the Court could find a

5  basis to disregard the corporate formalities. Instead, Plaintiff's Complaint alleges liability against

6  Liberty Mutual only under the particular theories of agency, partnership, and joint venture. (Compl.

7  ¶¶ 4, 8.) Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss to the extent it is based

8  on Plaintiff's failure to sufficiently allege alter-ego liability in the original Complaint.

9  **B.      Agency, Partnership, and Joint Venture**

10  Here, Plaintiff has only alleged legal conclusions that Liberty Mutual and Liberty Life are an

11  agency, a partnership, and/or a joint venture. (Compl. ¶ 4, 8.) Plaintiff has not alleged any

12  supporting facts to support the existence of an agency, partnership, or joint venture. "The court need

13  not accept as true conclusionary allegations or legal characterizations. Nor need it accept

14  unreasonable inferences or unwarranted deductions of fact." Hon. William W. Schwarzer, et al.,

15  *supra* § 9:221; *see also VeriFone Inc.*, 11 F.3d at 868 (stating "[c]onclusory allegations of law and

16  unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim")

17  (citation omitted). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to

18  Plaintiff's agency, partnership, and joint venture allegations contained in the original Complaint.[10]

19  **C.      Liberty Mutual's Direct Liability**

20  Plaintiff also contends that Liberty Mutual is a proper Defendant because Liberty Mutual is

21  independently liable for its direct involvement in the handling of Plaintiff's claim. Defendants

22  respond that Liberty Mutual cannot be held liable for its handling of Plaintiff's claim because it was

23  not a party to the contract.

24  It is well established that claims supervisors and other insurance company personnel

25  involved in investigating or evaluating an insured's claims are not parties to the insurance contract,

26  and thus are not subject to the implied covenant. Hon. H. Walter Croskey, *et al.*, *supra*, § 12:100

27

28  [10]Plaintiff submitted a proposed Amended Complaint in support of her motion to amend. The Court declines to rule on the sufficiency of that proposed pleading and **GRANTS** Plaintiff leave to file an amended pleading not later than 20 days from the filing of this Order.

*left margin:* **United States District Court** For the Northern District of California

1    (citing *Iversen v. Super.Ct.*, 57 Cal. App. 3d 168, 172 (1976); *Hale v. Farmers Ins. Exch.*, 42 Cal.

2    App. 3d 681, 702 (1974), *disapproved on other grounds in Egan v. Mutual of Omaha Ins. Co.*, 24

3    Cal. 3d 809, 822 (1979)).  Therefore, to the extent Liberty Mutual was involved in the handling of

4    Plaintiff's claim, it cannot be directly liable for bad faith claims because Liberty Mutual was not a

5    party to the underlying insurance contract.

6         **D.     Punitive Damages**

7         Defendants argue that there is no basis for Plaintiff's claim for punitive damages.  However,

8    a complaint is not subject to a motion to dismiss for failure to state a *claim* under Rule 12(b)(6)

9    because the prayer seeks relief that is not recoverable as a matter of law.  Hon. William W.

10   Schwarzer, et al., *supra* at § 8:171; *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).

<div align="center"><strong>CONCLUSION</strong></div>

11

12        For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss; the Court

13   **GRANTS** Plaintiff's Motion to Amend; and the Court **DENIES** Defendants' Motion to Strike

14   Plaintiff's Request for Judicial Notice as moot.  Plaintiff shall file an Amended Complaint not later

15   than 20 days from the filing of this Order.

16

17

18   **IT IS SO ORDERED.**

19

20

21   Dated: February___5___, 2007

                                          MARTIN J. JENKINS

22                                        UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

<div align="center">10</div>

United States District Court

For the Northern District of California