United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA MONACO, | No. C06-07021 MJJ |
| Plaintiff, | **ORDER DENYING IN PART AND GRANTING IN DEFENDANTS' MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION TO STRIKE** |
| v. | |
| LIBERTY LIFE ASSURANCE CO, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant Liberty Life Assurance Company of Boston ("Liberty Life") and Defendant Liberty Mutual Insurance Company's ("Liberty Mutual") (collectively, "Defendants") Motion to Dismiss Liberty Mutual from this action.[1] Plaintiff Regina Monaco ("Plaintiff" or "Monaco") opposes the motion. Also before the Court is Plaintiff's Motion to Strike Defendants' Reply Brief for exceeding the maximum page limit[2] and Defendants' Ex Parte Motion for Leave to Exceed the Reply Brief Page Limit.[3] For the following reasons, the Court **DENIES** in part and **GRANTS** in part Defendants' Motion to Dismiss; the Court **DENIES** Plaintiff's Motion to Strike; and the Court **STRIKES** Defendants' Motion for Leave as moot.

///

---

[1] Docket No. 53.

[2] Docket No. 72.

[3] Docket No. 73.

## FACTUAL BACKGROUND

This action arises from the alleged wrongful denial of disability benefits to which Plaintiff claims she is entitled under a group disability income policy. On October 4, 2006, Plaintiff filed her Complaint in the Superior Court for the State of California for the County of Alameda. On November 9, 2006, Defendants removed the action to this Court. On February 6, 2007, this Court granted Defendants' motion to dismiss, without prejudice.[4] On February 15, 2007, Plaintiff filed her First Amended Complaint[5]. The material allegations taken from Plaintiff's First Amended Complaint are as follows.

Plaintiff was employed at the University of California Lawrence Livermore Laboratories ("Lawrence Livermore") and later employed at the University of California at Santa Cruz ("U.C. Santa Cruz"), during which time Plaintiff was eligible for short and long-term disability benefits under a Group Disability Income Policy ("the Policy") issued by Defendants. (First Amended Complaint ("FAC.") at ¶¶ 10-12.) While employed at Lawrence Livermore, Plaintiff sustained an injury for which she claimed disability benefits under the Policy. (*Id*. at ¶¶ 14-15.) Defendants wrongfully denied Plaintiff's initial claim for benefits, and subsequently denied Plaintiff's appeal. (*Id*. at ¶¶ 17-18.)

Plaintiff later submitted a second claim for disability benefits to Defendants under the Policy. (*Id*. at ¶¶ 19-21.) Plaintiff's second claim arose from a "new and different injury" sustained while employed at U.C. Santa Cruz. (*Id*. at ¶ 19.) Plaintiff alleges that Defendants wrongfully denied her second claim for benefits, and subsequently denied her appeal. (*Id*. at ¶¶ 22-24.)

Plaintiff alleges that Liberty Life is a wholly owned subsidiary of Liberty Mutual, and that

---

[4] Defendants moved to dismiss all claims against Liberty Mutual on grounds that Liberty Mutual was not a party to the insurance contract at issue and because Plaintiff had failed to plead that Liberty Mutual was an alter ego, agent, partner, or joint venturer of Liberty Life. In granting Defendants' motion to dismiss, this Court found that: (1) Liberty Mutual was not directly liable for Plaintiff's claims because it was not a party to the insurance contract; (2) Plaintiff had failed to sufficiently allege that Liberty Mutual was the alter-ego of Liberty Life, or allege facts from which the Court could find a basis to disregard the corporate formalities; and (3) Plaintiff had failed to allege facts to support the existence of an agency, partnership, or joint venture between Liberty Life and Liberty Mutual. (Order Granting Defendants' Motion to Dismiss Plaintiff's Complaint.)

[5] Plaintiff's First Amended Complaint is identical to her original Complaint, with the exception of two paragraphs in which Plaintiff pleads additional allegations to support her alternative theories that Liberty Mutual and Liberty Life are agents, partners, joint venturers, and/or alter egos. (FAC ¶¶ 4, 5.)

2

1 Liberty Life's operations were controled and managed by Liberty Mutual such that the entities
2 operate as a single insurance company. (*Id*. at ¶ 4.) According to Plaintiff, Liberty Life and Liberty
3 Mutual constitute a single partnership, association, or joint venture under the management and
4 control of Liberty Mutual such that the entities are alter egos of each other. (*Id*.)

5 Plaintiff asserts four causes of action against Liberty Life and Liberty Mutual. Plaintiff's
6 first and second causes of action arise from Plaintiff's *initial claim* for benefits for her injury
7 sustained at Lawrence Livermore and are against both Defendants for breach of contract and breach
8 of the implied covenant of good faith and fair dealing. (*Id*. at ¶¶ 25-35) (emphasis added.)
9 Plaintiff's third and fourth causes of action arise from Plaintiff's *second claim* for benefits for her
10 injury sustained at U.C. Santa Cruz and are against both Defendants for breach of contract and
11 breach of the implied covenant of good faith and fair dealing. (*Id*. at ¶¶ 36-45) (emphasis added.)

12 Defendants again move to dismiss each of Plaintiff's causes of action as to Liberty Mutual.

### LEGAL STANDARD

14 A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal
15 sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a
16 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court
17 ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network,*
18 *Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Generally, dismissal is proper only when the plaintiff has
19 failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal
20 theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir.
21 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean*
22 *Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Further, dismissal is appropriate only if it
23 appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim. *See*
24 *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). In considering a Rule 12(b)(6) motion,
25 the Court accepts the plaintiff's material allegations in the complaint as true and construes them in
26 the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.
27 2000). However, "[t]he court need not accept as true conclusionary allegations or legal
28 characterizations. Nor need it accept unreasonable inferences or unwarranted deductions of fact."

3

1 Hon. William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*
2 § 9:221 (2006) (citations omitted); *see also Halkin v. VeriFone Inc.*, 11 F.3d 865, 868 (9th Cir.
3 1993) (stating "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat
4 a motion to dismiss for failure to state a claim.")

5 In the context of a motion to dismiss, when matters outside the pleading are presented to and
6 accepted by the court, the motion to dismiss is converted into one for summary judgment. However,
7 matters properly presented to the court, such as those attached to the complaint and incorporated
8 within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios,*
9 *Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Where a plaintiff fails to
10 attach to the complaint documents referred to therein, and upon which the complaint is premised, a
11 defendant may attach to the motion to dismiss such documents in order to show that they do not
12 support the plaintiff's claim. *See Pacific Gateway Exchange*, 169 F. Supp. 2d 1160, 1164 (N.D.
13 Cal. 2001); *Branch v. Tunnell*, 14 F.3d 449, 44 (9th Cir. 1994) (overruled on other grounds). Thus,
14 the district court may consider the full texts of documents that the complaint only quotes in part. *See*
15 *In re Stay Electronics Sec. Lit.*, 89 F.3d 1399, 1405 n.4 (1996), *cert denied*, 520 U.S. 1103 (1997).
16 This rule precludes plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting
17 references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699,
18 705 (9th Cir. 1998).

19 Motions to dismiss for failure to state a claim are generally disfavored. *See Gilligan v.*
20 *Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *United States v. City of Redwood City*, 640
21 F.2d 963, 966 (9th Cir. 1981). In dismissing for failure to state a claim, "a district court should grant
22 leave to amend even if no request to amend the pleadings was made, unless it determines that the
23 pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d
24 494, 497 (9th Cir. 1995) (citations omitted).

## ANALYSIS

26 A brief summary of the parties' arguments are as follows. Defendants take positions that are
27 nearly identical to those in their previous motion to dismiss. In particular, Defendants insist that
28 Plaintiff's causes of action against Liberty Mutual must be dismissed because Liberty Mutual is not

4

1 a party to the insurance contract at issue. Next, Defendants contend that each of Plaintiff's
2 alternative theories of liability against Liberty Mutual – for alter ego, partnership, agency, and/or
3 joint venturer – also fail. In her Opposition, Plaintiff maintains that dismissal of Liberty Mutual
4 would be inappropriate because the alter ego analysis is a fact-intensive inquiry, not appropriately
5 resolved in the context of a motion to dismiss. Plaintiff avers that not allowing her to proceed
6 against Liberty Mutual under an alter ego theory would defeat her ability to recover her full amount
7 of potential damages and also hinder her ability to obtain meaningful discovery from both
8 Defendants. As to her remaining theories of liability, Plaintiff maintains that she has sufficiently
9 alleged facts to support liability against Liberty Mutual on grounds that Liberty Mutual and Liberty
10 Life are an unincorporated association, a joint venture, and/or an agency. The Court now turns to
11 the allegations against Liberty Mutual as contained in Plaintiff's First Amended Complaint.

**I.    Liberty Mutual is Not a Party to the Contract**

13 As an initial matter – as this Court stated in its previous Order granting Defendant's motion
14 to dismiss Plaintiff's Complaint – Liberty Mutual may not be directly liable for breach of contract or
15 breach of the implied covenant because Liberty Mutual was not a party to the insurance contract
16 between Liberty Life and the University of California. (Order Granting Defendants' Motion to
17 Dismiss Plaintiff's Complaint at 6:1-8:2.) The general rule provides that such an action in contract
18 and tort lies only against the insurer as the party to the contract. Hon. H. Walter Croskey, *et al.*,
19 *California Practice Guide: Insurance Litigation* § 12:92 (2006) (citing *Gruenberg*, 9 Cal 3d at 576;
20 *Tran v. Farmers Group, Inc.*, 104 Cal. App. 4th 1202, 1216 (2002) (citations omitted)); *see also*
21 *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995); Cal. Civ. Code § 1550.[6] The Court
22 reasoned that no exception to that general rule applied to the current case. A review of the First
23 Amended Complaint does not change the Court's conclusion here. Plaintiff's allegations remain
24 insufficient to state a cause of action against Liberty Mutual under the exception to the general rule.
25 Therefore, as in the previous Order, the Court now turns to Plaintiff's alternate theories of liability to
26 determine if Plaintiff has otherwise stated a cause of action against Liberty Mutual in the operative

---

[6]Because this case was removed to federal court on the basis of diversity jurisdiction, California law governs the substantive issues of the case. *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1163 (9th Cir. 1995) (citing *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1556 (9th Cir. 1991)).

5

Complaint.

## II. Alternative Theories of Liability Against Liberty Mutual

### A. Alter Ego

Defendants argue that the allegations in Plaintiff's First Amended Complaint are insufficient to support the theory that Liberty Mutual is the alter-ego of Liberty Life. More specifically, Defendants insist that Plaintiff has failed to allege a unity of interests between Liberty Mutual and Liberty Life, or that dismissing Liberty Mutual would result in a fraud or inequity. Conversely, in support of her alter ego argument, Plaintiff relies on the new allegations contained in paragraphs 4 and 5 of the First Amended Complaint. According to Plaintiff, there are ample factual allegations of an alter ego relationship to defeat Defendants' motion to dismiss.

As previously noted by this Court, in the insurance context, bad faith liability may be imposed on a person or entity shown to be a corporate insurer's "alter-ego." To justify piercing the corporate veil on an alter-ego theory, thereby holding a parent corporation liable for the acts or omissions of its subsidiary, a plaintiff must establish two general requirements: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *See* Hon. William W. Schwarzer, et al., *supra* § 12:97.5 (citing *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (1985)); *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998). The question whether alter ego liability applies is a factual inquiry which necessarily varies according to the circumstances of each case. *Institute of Veterinary Pathology, Inc. v. Calif. Health Laboratories, Inc.*, 116 Cal. App. 3d 111, 119 (1981). The trier of fact must consider a wide variety of factors[7] to determine whether both prongs of this test are

---

[7] In evaluating the particular circumstances of each case, courts may consider a number of factors in determining whether the corporate existence will be disregarded. *See Associated Vendors,* 210 Cal. App. 2d at 837. A non-inclusive list of the factors that may be considered in analyzing the two-prong test include: The unauthorized use of or commingling of funds or the failure to segregate the funds of the separate entities; the failure to maintain minutes or adequate corporate records; the confusion of the records of the separate entities; the identical equitable ownership in the two entities; identification of the equitable owners thereof with the domination and control of the two entities; the use of the same office or business locations; the employment of the same employees and/or attorney; the failure to adequately capitalize a corporation or the total absence of corporate assets; the use of a corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an individual or another corporation; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; the disregard

6

satisfied. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine. *Talbot v. Fresno-Pac. Corp.*, 181 Cal. App. 2d 425, 432 (1960). In order to successfully plead liability for an underlying cause of action under the alter-ego theory, the plaintiff must make allegations of facts from which it appears that recognition of the corporate entity would sanction a fraud or promote injustice. *See Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499 (1950); *Judelson v. Am. Metal Bearing Co.*, 89 Cal. App. 2d 256, 263 (1948). Conclusory allegations of alter-ego status are not sufficient. *See Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983) (citation omitted). There is a general presumption in favor of respecting the corporate entity. *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).

### 1. Unity of Interest

The first general requirement for alter ego liability is that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. *See* Hon. William W. Schwarzer, et al., *supra* § 12:97.5 (citing *Mesler*, 39 Cal. 3d at 300). Defendants contend that the invocation of "alter ego" is not a "magic talisman" to satisfy the pleading requirements. Plaintiff responds by identifying new and specific factual allegations from the First Amended Complaint. In order to determine if Plaintiff has sufficiently pleaded alter ego liability, the Court must compare Plaintiff's original and her First Amended Complaints.

Here, Plaintiff's First Amended Complaint contains a number of new factual allegations which sufficiently implicate the factors enumerated in *Associate Vendors*. *Associated Vendors,* 210 Cal. App. 2d at 837-40. In particular, some of Plaintiff's allegations are that: Liberty Mutual controlled and managed Liberty Life's claims operation such that the entities acted as a single company (FAC ¶ 4); Liberty Mutual is the parent company of Liberty Life and owns 90% of Liberty Life (*id*. ¶¶ 4.a, 4.b); the entities share a common corporate headquarters address (*id*. ¶ 4.c); the entities are part of Liberty Mutual's holding company structure (*id*. ¶ 4.e); Liberty Mutual fully guarantees the insurance policy and annuity contract obligations of Liberty Life (*id*. ¶ 4.f); the

---

of legal formalities and the failure to maintain arm's length relationships among related entities; and the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another. *Id*. at 837-40 (citations omitted).

1 entities share services of personnel, equipment, telephone, computers, and other business machines
2 (*id*. ¶ 4.h); Liberty Mutual markets Liberty Life's products (*id* ¶ 4.i); the entities share a common
3 chairman of their respective boards (*id*. ¶ 4.j); the entities share several other officers (*id*.); five of
4 the seven directors of Liberty Life are also directors of Liberty Mutual (*id*. ¶ 4.k); the entities share a
5 common web page (*id*. ¶ 4.l); Liberty Mutual employs the claims personnel who handle Liberty Life
6 disability claims (*id*. ¶ 4.m); Liberty Mutual handles Liberty Life disability administrative appeals
7 (*id*.); Liberty Life and Liberty Mutual share the same computer system (*id*.); Liberty Mutual
8 provides training for Liberty Life's claims employees (*id*. ¶ 4.n); Liberty Life's Claims Procedure
9 Manual indicates that Liberty Mutual prepared or participated its preparation (*id*. ¶ 4.o); Liberty
10 Life's Claims Procedure Manual refers to "Liberty" without drawing a distinction between Liberty
11 Mutual and Liberty Life (*id*.); Liberty Mutual's logo appears in numerous locations in Liberty Life's
12 Claim Procedure Manual (*id*.); the entities use the same agent for the service of process (*id*. ¶ 4.r);
13 the entities use the same counsel (*id*. ¶ 4.s); the entities use the same logo (*id*. ¶ 4.x); Liberty Life's
14 "operations are integrated with its parent via an administrative services agreement with all
15 employees maintained by Liberty Mutual (*id*. ¶ 4.aa); and Plaintiff's December 20, 2000 and March
16 7, 2005 benefits denial letters contain a Liberty Mutual logo (*id*. ¶¶ 4.cc, 4.dd). Here, Plaintiff has
17 gone beyond the mere "conclusory allegations" that were contained in the original Complaint. *See*
18 *Rae Systems, Inc. v. TSA Systems, Ltd.*, 2005 WL 1513124 at *4 (N.D. Cal. 2005); *Federal Reserve*
19 *Bank of San Francisco v. HK Systems, Eaton Corp.*, 1997 WL 227955 at *6 (N.D. Cal. 1997).
20 Because the facts regarding many of the other *Associated* Vendors factors are presumably in
21 Defendants' exclusive control, it would be inappropriate for the Court to grant Defendants' motion
22 without allowing Plaintiff an opportunity to obtain discovery as to those other factors.[8] As a result,

---

[8] Admittedly, no single factor in isolation is normally sufficient to establish alter ego liability. *See e.g., Institute of Veterinary Pathology, Inc.*, 116 Cal. App. 3d at 119-20 (alter ego liability is not established by stock ownership or interlocking directorates alone) (citation omitted); *Wady v. Provident life & Acc. Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1668 (C.D. Cal. 2002) (acts of borrowing money from its subsidiary and use of pronouns such as "we," "us," or "our," was insufficient to establish alter ego liability); Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001) ("a parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego.") However, in the current case, in examining the totality of the circumstances, Plaintiff's First Amended Complaint adequately implicates a requisite number of alter ego factors to allege a unity of interest.

Furthermore, the Court notes that the majority of the alter ego cases on which Defendants rely are procedurally inapposite because they were not decided at the pleadings stage, but instead were decided either after trial or at summary

1 the Court cannot say, at this stage of the case, that Plaintiff can prove no set of facts that would
2 entitle her to relief against Liberty Mutual under an alter ego theory of liability.

### 2. Inequitable Result

The second general requirement for alter ego liability is that an inequitable result will follow if the acts are treated as those of the corporation alone. *See* Hon. William W. Schwarzer, et al., *supra* § 12:97.5 (citing *Mesler*, 39 Cal. 3d at 300). Here, Plaintiff's First Amended Complaint contains an allegation that injustice would result if Liberty Mutual were not a party to the action. (FAC ¶¶ 4, 5.) Plaintiff claims that she would be precluded from adequately pursuing her claims for compensatory and punitive damages. (*Id*.) Defendants argue that Plaintiff has failed to sufficiently plead the second general requirement, and that dismissing Liberty Mutual would not promote an inequitable result because Liberty Life has sufficient assets to satisfy any potential judgment.

Again, however, Defendants rely on cases that are procedurally inapposite because they were not decided at the pleadings stage, but instead were decided either after trial or at summary judgment. *See e.g., Wady*, 216 F. Supp. 2d 1060; *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (1994). Here, the Court cannot conclude, at this stage of the case, that Plaintiff can prove no set of facts that would entitle her to relief against Liberty Mutual under an alter ego theory of liability. Because the issue of alter ego liability is a fact intensive inquiry and because Plaintiff has satisfied the notice pleading requirement, dismissal of Plaintiff's alter ego theory would be inappropriate here. For this reason, the Court **DENIES** Defendants' Motion to Dismiss to the extent it is based on Plaintiff's failure to sufficiently allege alter ego liability in the First Amended Complaint.

### B. Agency

In the First Amended Complaint, Plaintiff alleges that Liberty Mutual and Liberty Life are agents. (FAC at ¶ 9.) Defendants assert that there can be no agency liability because: (1) Liberty Mutual is not an agent of Liberty Life because Liberty Mutual did not exercise the necessary degree of control over Liberty Life to establish agency; and (2) Liberty Life is not an agent of Liberty

---

judgment. *See e.g., Weban Estate, Inc. v. Hewlett*, 193 Cal. 675 (1924); *Roman Catholic Archbishop of San Francisco v. Super. Ct. of Alameda (Sheffield)*, 15 Cal. App. 3d 405 (1971); *Institute of Veterinary Pathology, Inc.*, 116 Cal. App. 3d 11 (1981); *Judelson v. Am. Metal Beating Co.*, 89 Cal. app. 2d 256 (1948).

9

1 Mutual because there was full disclosure of Liberty Life and the alleged principal. (*See* Def.s'
2 Motion at 21:5-24.)  In her Opposition, Plaintiff contends that she has pleaded sufficient facts to
3 support a claim that Liberty Life was an agent of Liberty Mutual.  (Pl.'s Opp. at 21:19-20.)
4 However, Plaintiff does not dispute Defendants' assertion that Liberty Mutual cannot be an agent of
5 Liberty Life.  Accordingly, the Court turns to the issue of whether Plaintiff has sufficiently pleaded
6 that Liberty Life was an agent of Liberty Mutual.

7 An agent, under California law, is "one who represents another, called the principal, in
8 dealings with third persons." Cal. Civ. Code § 2295.  However, to establish a parent corporation's
9 liability for acts or omissions of its subsidiary on an agency theory, a plaintiff must show more than
10 mere representation of the parent by the subsidiary in dealings with third persons.  The showing
11 required is that "a parent corporation so controls the subsidiary as to cause the subsidiary to become
12 merely the agent or instrumentality of the parent[.]"  *Laird*, 68 Cal. App. 4th at 741 (citations
13 omitted).

14 Here, Defendants request the Court to find, as a matter of law, that Liberty Mutual did not
15 exercise sufficient control to cause Liberty Life to become Liberty Mutual's agent.  However, under
16 Rule 12(b)(6) the Court must accept the plaintiff's material allegations in the complaint as true and
17 construe them in the light most favorable to the plaintiff.  *See Shwarz*, 234 F.3d at 435.  Defendants'
18 request – to find that Liberty Mutual did not exercise sufficient control over Liberty Life – is a
19 factual question that is more appropriately decided in the context of a Rule 56 motion.  Accordingly,
20 the Court **DENIES** Defendants' Motion to Dismiss to the extent Defendant has requested the Court
21 to find that Liberty Life is not Liberty Mutual's agent.[9]

---

[9]To the extent Plaintiff alleges that Liberty Mutual is an agent of Liberty Life, the Court finds her allegation fails as a matter of law.  Under California law, an insurance agent, acting within the scope of her agency for a disclosed insurance agency, is an improper defendant.  *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  The California Court of Appeal in *Lippert v. Bailey*, 241 Cal. App. 2d 376, 382 (1966), held that liability to the insured "for acts or contracts of an insurance agent within the scope of his agency, with a full disclosure of the principal, rests on the company." *See also, Kurtz, Richards, Wilson & Co., Inc. v. Insurance Communicators Marketing Corporation*, 12 Cal. App. 4th 1249, 1257-58 (1993) (in a negligence case, "where the agent contracts in the name of the insurer and does not exceed that authority, the insurer is liable, and not the agent").  Here, Plaintiff's original Complaint conceded that: (i) the alleged principle, Liberty Life, was a disclosed principal (Compl. ¶ 9, Ex. A); and (ii) the alleged agent, Liberty Mutual, was acting within the course and scope of its agency.  (Compl. ¶ 8); *See Canine v. Liberty Mutual Ins.*, 2006 U.S. Dist. LEXIS 11073 at *12-13 (finding "as an [alleged] agent of Liberty Life, Liberty Mutual cannot be held liable for the breach of contract by its [alleged] principal if Liberty Mutual was acting within the scope of its agency.").  Therefore, as alleged here, where the

10

### C. Partnership, Joint Venture, and Association

In the First Amended Complaint, Plaintiff also alleges that Defendants are a "single partnership, association, or joint venture under the management and control of Liberty Mutual." (FAC at ¶¶ 4.) As support for these contentions, Plaintiff provides a list of additional facts, not present in her original Complaint. (*Id*. at ¶ 4.a-dd.) Defendants argue that Liberty Mutual is not a proper Defendants because: (1) Plaintiff has not pled sufficient facts for these theories; and (2) Plaintiff's partnership/joint venture allegation contradicts other allegations in the Complaint. In particular, Defendants argue that the allegation contradicts Plaintiff's allegation that Defendants are separate corporations "organized and existing under the laws of . . . Massachusetts." (FAC ¶¶ 2-3.) Plaintiff avers that she has plead sufficient facts to support these theories.

Here, unlike in her original Complaint, Plaintiff has sufficiently pleaded facts to support her alternative theories of liability against Liberty Mutual. Plaintiff has provided more than a "generic boilerplate" to support these alternative theories. *See Moore v. Regents of Univ. of Calif.*, 51 Cal. 3d 120, 134 (1990). As indicated above, the Court cannot conclude, at this stage of the case, that Plaintiff can prove no set of facts that would entitle her to relief against Liberty Mutual under these theories of liability. For this reason, the Court **DENIES** Defendants' Motion to Dismiss to the extent it is based on Plaintiff's failure to sufficiently allege these alternative theories of liability in the First Amended Complaint.

///
///
///
///
///
///
///

---

alleged agent – Liberty Mutual – was acting within the scope of its agency for a disclosed principal – Liberty Life – there can be no agency liability as to Liberty Mutual. Because Liberty Mutual is an improper defendant under such a theory, the Court **GRANTS** Defendants' Motion to Dismiss to the extent Defendant has requested the Court to find that Liberty Mutual is not liable as Liberty Life's agent.

11

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** in part and **GRANTS** in part Defendants' Motion to Dismiss; the Court **DENIES** Plaintiff's Motion to Strike; and the Court **STRIKES** Defendants' Motion for Leave as moot.

**IT IS SO ORDERED.**

Dated: April 17, 2007

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE